UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

| | |
|---|---|
| THE ESTATE OF DAVID SHAFER, and COLLEEN SHAFER, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF SPOKANE, a municipal corporation, <br><br> Defendant. | Case No.: <br><br> **COMPLAINT FOR DAMAGES** <br><br> **JURY DEMAND** |

Plaintiff COLLEEN SHAFER, in her official capacity as the Personal Representative of the ESTATE OF DAVID SHAFER and in her individual capacity, by and through her attorneys, Braden Pence of MacDonald Hoague & Bayless and James Herr of the Law Office of James Herr, based on information and belief, alleges the following causes of action:

I. **INTRODUCTION**

This case arises from the fatal shooting of David Shafer by Caleb Martin, a police officer employed by Defendant City of Spokane. Upon Martin's arrival at the

Shafer home on October 23, 2019, David Shafer had not hurt himself or anyone else, nor discharged a weapon, and police had no probable cause for any crime. Although Martin knew David was experiencing a mental health crisis, Martin failed to use standard crisis intervention techniques including de-escalation and time, distance, and cover. As a result, within minutes of his arrival, Martin unnecessarily fired two rounds from an AR-15 through a quiet residential neighborhood, killing David, leaving his wife Colleen a widow and his children fatherless.

## II.   PARTIES

2.1   Plaintiff, COLLEEN SHAFER is an individual and the wife of David Shafer. She is the duly appointed Personal Representative of the Estate of David Shafer. She brings this action in her official capacity, on behalf of the Estate of David Shafer, herself, and all other statutory beneficiaries to the death of David Shafer. At all times relevant to this action, she was a resident of Spokane County, Washington.

2.2   The Estate of David Shafer is a duly probate action filed in Spokane County Superior Court under cause number 22-4-01842-32.

2.3   Defendant CITY OF SPOKANE ("Defendant City") is a municipal corporation organized under the laws of the State of Washington. At all times relevant to this action, Defendant City controlled and operated the Spokane Police Department ("SPD") and employed Caleb Martin as a law enforcement officer. At all times relevant to this action, Caleb Martin was a sworn law enforcement officer acting under color of law and within the course and scope of his employment with

Defendant City. Defendant City exists within the territorial jurisdiction of the United States District Court for the Eastern District of Washington. Defendant City accepted federal funding during and every year since 2019, the year this incident occurred.

### III.    JURISDICTION

3.1    This Court has direct and supplemental jurisdiction over the federal and state law claims asserted herein pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3.2    Venue is appropriate in the Eastern District of Washington pursuant to 28 U.S.C. § 1391 because the events and omissions giving rise to the claims alleged herein occurred, and the Defendant exists, within the Eastern District.

3.3    All conditions precedent to this action have been complied with or waived. Pursuant to RCW 4.96.020, Defendant City has had more than the required 60 days-notice of all state claims alleged herein.

### IV.    FACTUAL ALLEGATIONS

4.1    David Shafer's traumatic childhood included physical and sexual abuse.

4.2    Despite struggling with depression and substance use disorder, David built a meaningful and productive life.

4.3    In 1994, he met Plaintiff Colleen Shafer and married her in 1996. With her, David raised and financially and emotionally supported five children.

4.4    David was a hard worker. A welder by trade, he wore out his back from a lifetime of labor, resulting in several surgeries. He was ultimately declared

physically disabled.

4.5     A religious man, David Shafer regularly attended church, as well as a support group led by church elder David Palmer.

4.6     In October 2019, David Shafer experienced an alcohol relapse and began drinking. He scheduled an appointment to begin in-patient ipecac alcohol aversion therapy at Shick Shadel in Washington, with an admission date of October 25, 2019.

4.7     On October 23, 2019, David experienced a mental health crisis related to alcohol dependency and depression.

4.8     With Colleen and the kids out of the house for the day, off to work and school, , David began drinking.

4.9     By early afternoon, he was intoxicated and despondent.

4.10    He called Mr. Palmer for help, saying he was drunk, depressed, and wanted to end it all by shooting himself.

4.11    This type of heavy drinking followed by talk of self-harm was a pattern for David, one recognized by his family and friends as a symptom of his substance use disorder and depression. However, David had never actually harmed himself or attempted to take his own life.

4.12    Mr. Palmer decided to go to David's home and brought along another church elder, William Putman. Mr. Palmer and Mr. Putman drove together to the Shafer home in Mr. Palmer's red pickup truck.

4.13    On the way, Mr. Putman called 9-1-1 and reported that David was

intoxicated, suicidal, alone, and armed. While the 9-1-1 call was in progress, Mr. Palmer and Mr. Putman contacted David a few blocks from the Shafer home. David was walking down the sidewalk toward a local grocery store "to get more beer." While the 9-1-1 call was in progress, David handed his pistol over to Mr. Palmer and Mr. Putman.

4.14  David then returned on foot to his home where, Mr. Putman reported to 9-1-1, there were more firearms.

4.15  Mr. Palmer and Mr. Putman described David as very intoxicated. They noted that he was swinging his arms in an exaggerated an uncoordinated fashion and that he was having difficulty walking.

4.16  9-1-1 dispatched Caleb Martin and other officers employed by Defendant City to respond to a report of an intoxicated and suicidal individual.

4.17  The first officer on scene, Martin avoided driving past the Shafer home, and instead parked his marked patrol vehicle at the end of the block east of the home, out of sight, with trees and vehicles providing concealment and cover.

4.18  Upon exiting his vehicle, Martin immediately retrieved his AR-15 long gun, and began repeatedly checking to make sure it was in working order.

4.19  Martin was then approached by Mssrs. Palmer and Putman, who handed over the pistol they had taken from David.

4.20  Martin then stealthily moved up the street on foot toward the Shafer home where he observed David sitting on the front porch. David did not see Martin and had no notice that police were on the scene.

4.21   Martin then retreated to his patrol vehicle and recontacted Palmer and Putman who were sitting in Palmer's idling red pickup truck and, significantly, talking on the phone with David.

4.22   Martin, standing outside of the truck, could hear both sides of the conversation between Palmer, Putman, and Shafer because the windows were rolled down and the call was connected to the truck's speakers. Martin listened just long enough to hear David say that he was sitting on his porch waiting for the police officers with a .22 he received from his father.

4.23   At that point, Martin unreasonably decided that he had heard enough. He unreasonably abandoned the open line of communication with the crisis subject. He unreasonably failed to engage the crisis subject in de-escalatory dialog. He unreasonably failed to encourage Palmer and Putman to continue dialog. He unreasonably failed to continue monitoring the call. As a result, Martin unreasonably deprived himself, his colleagues, and his employer of the critical information that followed.

4.24   Because Martin walked away from the open line of communication with the crisis subject, Martin did not hear David ask Mr. Putman and Mr. Palmer where they had gone, and why they had "abandoned" him. Martin did not hear Mr. Palmer reassure David that he had not been abandoned by his friends, and that they were merely parked at the end of the block. Thus, Martin did not know why David ambled off his porch and down his driveway: to look for his friends.

4.25 Having unreasonably abandoned the open line of communication, Martin also unreasonably failed to coordinate with appropriate backup or establish a perimeter from which they could use de-escalation and non-confrontational tactics or potentially deploy non-lethal force. Instead, Martin escalated the encounter to a violent confrontation rather than create opportunity for time and dialogue.

4.26 Having seen David come off the porch, Martin crept up on David from behind, pointed the AR-15 at David's back, and yelled commands at David. Unreasonably, Martin did not identify himself as police.

4.27 As Martin made this tactical assault, Mr. Palmer and Mr. Putman were still on the phone with David. When David told them he could not see them west of the Shafer home, they told him they were behind him, to the east. At that point, David turned around and found himself confronted by Martin: a stranger in an all-black uniform, standing in firing position, and pointing a rifle at him.

4.28 Martin then shot and killed David.

4.29 This was Martin's second fatal shooting in just three years of employment with Defendant City.

4.30 Mr. Palmer and Mr. Putman, who had been interacting with David for some time prior to Martin's arrival, who had been speaking with David on the phone until he was shot, and who had disarmed David of one firearm prior to Martin's arrival, did not believe David was a danger to anyone but himself.

4.31 David was killed as a direct and proximate result of Martin's

unjustifiable acts and omissions, including but not limited to the failure to utilize standard de-escalation techniques defined by Defendant City policies and state-mandated de-escalation training and the failure to gather reasonably available information before rushing into a dangerous situation.

4.32    Defendant City, through its employees, knew, based upon information relayed to through 9-1-1, that David was suicidal, and depressed. A reasonable officer should have known based upon that information that David was therefore a person with a 'disability.'

4.33    Martin deprived David of a reasonable accommodation for his mental disabilities—the accommodation of utilizing standard crisis intervention techniques which are a vital part of all basic law enforcement training given in Washington State, including the use of de-escalation and communication, providing a buffer zone of space to avoid crowding, approaching slowly and at a reasonable distance, having a plan, actively listening, and presenting a calm and respectful demeanor.

4.34    Defendant City sent Martin to a scene involving no reported injuries or crime to provide positive assistance to a person in crisis. When Martin arrived, David was alive, uninjured, and no danger to himself or anyone else. Although Martin was called to provide positive assistance to a person in crisis, he caused the situation to rapidly deteriorate, and within minutes killed the person he was supposed to help.

4.35 Martin's unjustifiable actions and escalation proximately and immediately caused David to react in a manner that Martin claims justifies killing David.

## V. CLAIMS

5.1 Statements of fact in paragraphs 4.1-4.34 above are hereby re-incorporated as if fully stated herein for purposes of each claim below.

### FIRST CAUSE OF ACTION
### (Federal Law Claim – Americans With Disabilities Act, Title II UNDER 42 U.S.C. § 12132)

5.2 By virtue of the facts set forth above, Defendant City is liable to Plaintiff Estate for compensatory damages for violating David Shafer's right to be free from discrimination on the basis of a perceived disability, as well as for failing to provide a reasonable accommodation for a known disability under the Americans With Disabilities Act, Title II.

5.3 Under the Americans with Disabilities Act, Title II, 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

5.4 A "disability" can mean "being regarded as having such an impairment," under the ADA, 42 U.S.C. §12102(1).

5.5 Defendant City is a public entity and receives federal funds.

5.6 In receiving, processing and responding to a 9-1-1 call about an intoxicated, depressed, and suicidal individual, and in speaking to David's on-scene

friends and church elders, Defendant City and its agents knew or should have known he was a disabled person suffering from a mental health crisis.

5.7     Having been regarded as a qualified individual by a member/employee of Defendant SPD, David was entitled to receive the same law enforcement services provided to non-disabled individuals by Defendant City.

5.8     In particular, David was entitled to the benefit of an adequately trained officer who performed official duties consistent with that training and without discrimination on the basis of a disability, rather than one who acted and treated him in the manner Martin did.

5.9     As reflected in the facts set forth above, Defendant City, via its agent Caleb Martin, discriminated against David based upon his actual, and perceived disabilities and excluded him from receiving the benefit of a public entity's services: a non-harmful crisis intervention during a mental health crisis.

5.10    As reflected by the facts set forth above, Defendant City failed to provide a reasonable accommodation for David. A reasonable accommodation includes following standard and legally-required crisis intervention training which employ de-escalation techniques, such as using distance and time to control the pace of the interaction to allow for planned, deliberate responses and open communication with David, as well as tactics such as requesting (and obtaining) necessary personnel and equipment to address the situation non-lethally, assigning lethal and less-lethal responsibility to the tactical response team, and engaging in nonconfrontational communication.

5.11 Defendant City's failure to provide David with a reasonable accommodation was a foreseeable and proximate cause of his death.

5.12 At all times when Defendant City's agents were interacting with David, no reasonable exigency existed that would have prevented a reasonable accommodation.

### SECOND CAUSE OF ACTION
### (Federal Law Claim – Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794)

5.13 As reflected in the facts set forth above, Defendants City of Spokane and SPD are liable to Plaintiffs for compensatory and punitive damages for violating David's right to be free from discrimination on the basis of an actual or perceived disability, as well as failing to provide a reasonable accommodation for a known disability under the Rehabilitation Act.

5.14 Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..."

5.15 A "disability" under Title V of the Rehabilitation Act is given the same definition as the Americans with Disabilities Act (ADA), which includes "being regarded as having such an impairment."

5.16 Defendants City of Spokane and SPD are public entities that receive federal funds.

5.17    Martin, in responding to a 9-1-1 call informing him of a suicidal individual, and in speaking to Decedent David Shafer's church elders on the scene, knew he was suffering from a mental health crisis.

5.18    Having been regarded as a qualified individual by a member\employee of Defendant SPD, David was entitled to receive the same law enforcement services provided to other non-disabled individuals by Defendants City of Spokane and SPD.

5.19    In particular, David was entitled to the benefit of adequately trained officers who are able to engage with disabled members of the community to the same extent as non-disabled individuals.

5.20    As reflected in the facts set forth above, Defendants SPD and the City of Spokane failed to train, supervise, or discipline Martin in recognizing symptoms of disability, discriminated against David due to his perceived disability, and excluded David from receiving the benefit of a public entity's services: non-harmful interactions with police officers.

5.21    As reflected in the facts set forth above, Defendants SPD and the City of Spokane failed to provide a reasonable accommodation for David by failing to train their officers in Crisis Intervention techniques as required by Defendants' own internal policies.

5.22    At all times when Martin was interacting with David, no reasonable exigency existed that would have prevented Defendant from engaging in Crisis Intervention practices.

### THIRD CAUSE OF ACTION
**(State Law Claim – Negligence)**

5.23  As reflected in the facts set forth above, Defendant City is liable to Plaintiffs for the common law tort of negligence. Defendant and its employee Caleb Martin owed David Shafer the duty of reasonable care in processing and responding to a call involving a mental health crisis situation. Defendant's breach of that duty was a proximate cause of David's fatal injuries. Under state law, Defendant City is vicariously liable for the negligent acts of its employees carried out within the course and scope of their employment, including all of the acts of Caleb Martin alleged herein.

### VI.  JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all issues to triable under the law.

### VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for relief as follows:

7.1  Compensatory damages, including without limitation all recoverable economic and non-economic damages to David Shafer, the Estate of David Shafer, and all statutory beneficiaries thereto, caused by the events alleged herein, including but not limited to loss of consortium;

7.2  Costs, including reasonable attorneys' fees and litigation expenses, under 42 U.S.C. § 12205 and to the extent otherwise permitted by law; and

7.3  Such other relief as may be just and equitable.

DATED this 5th day of October 2022.

COMPLAINT FOR DAMAGES – Page 13

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

1  *s/Braden Pence*                                          *s/James Herr*
   Braden Pence, WSBA #43495                                 James Herr, WSBA #49811
2  MacDonald Hoague & Bayless                                Law Office of James Herr
   705 Second Avenue, Suite 1500                             4500 Ninth Ave NE, Ste. 300
3  Seattle, Washington 98104                                 Seattle, WA 98105
   Tel 206.622.1604 Fax 206.343.3961                         Telephone: (206) 866-7001
4  Email: BradenP@mhb.com                                    Email: james@jamesherrlaw.com
   Attorneys for Plaintiff                                   Attorneys for Plaintiff